**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **TERRION HUDSON,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**WALMART INC.,** )<br>)<br>**Defendant.** ) | )<br>)<br>)<br>) **Civil Action No: _____**<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>)<br>) |

# COMPLAINT

Plaintiff **Terrion Hudson** ("Hudson" or "Plaintiff") brings this civil rights action for relief and damages against Defendant **Walmart Inc.**, ("Walmart" or "Defendant") based on the following allegations and causes of action:

## NATURE OF THE ACTION

1. This action arises under Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 U.S.C.A. § 2000e *et seq.*, to correct unlawful

employment practices based on sexual orientation, race, and retaliation. Plaintiff Hudson further assets claims under 42 U.S.C.A. § 1981 based on race discrimination and retaliation. Hudson was subjected to repeated racist and homophobic slurs by his direct supervisor, and when he made multiple complaints to Walmart's human resources department, local managers sought to dissuade him from reporting discriminatory behavior by telling him that his job was in jeopardy if he continued to complain to the corporate headquarters. Hudson was subsequently terminated on pretextual grounds. Hudson seeks economic damages, including back pay; noneconomic compensatory damages; and punitive damages as well as attorneys' fees and costs of litigation. Hudson also petitions the Court for injunctive relief enjoining Walmart from maintaining a workplace where employees are subjected to a hostile environment based on their sexual orientation or race and from discharging employees for engaging in protected activity.

## THE PARTIES

2.     Plaintiff Hudson, an African American gay male, is a resident of Georgia. During the time of the events alleged in this complaint, Hudson was

employed at the Walmart located on 5455 Atlanta Highway in Alpharetta, Georgia, which is located in Fulton County.

3. Walmart is the world's largest retail corporation, operating a massive network of discount department and grocery stores. Its approximately 2.2 million employees constitute the largest corporate workforce in the world.

4. Walmart is an employer covered under Title VII in that it is engaged in an industry affecting commerce pursuant to 42 U.S.C.A. § 2000e(b), (g), and (h).

## SUBJECT MATTER JURISDICTION AND VENUE

5. Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

6. Venue is proper under 28 U.S.C.A. § 1391, as Walmart conducts business, and the alleged unlawful acts occurred, in this district and division.

## PERSONAL JURISDICTION

7. Walmart may be served with process concerning this civil action in accordance with Fed. R. Civ. P. Rule 4.

8. Walmart may be served with process through its registered agent on record with the Georgia Secretary of State: The Corporation Company at 708 S.W. 8th St., Bentonville, Arkansas 72716.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Hudson filed a charge of sex and race discrimination and retaliation against Walmart with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 410-2021-01534, on April 5, 2021. A copy is attached as Exhibit A.

10. The EEOC issued Hudson a Right to Sue letter on October 7, 2021. A copy is attached as Exhibit B.

11. Hudson timely files this action within 90 days of the issuance of a Right to Sue letter.

12. All administrative remedies have been satisfied prior to the filing of this civil action.

## FACTUAL ALLEGATIONS

13. Hudson was hired as a team lead at a Walmart store in Kansas City, Missouri, in March 2020. In Walmart terminology, a team lead functions as the equivalent of an assistant general manager, providing oversight to sales associates and assisting with store logistics.

14. In June 2020, Hudson decided to relocate to Georgia and was transferred to the Walmart at 5455 Atlanta Highway in Alpharetta. He continued in the team lead role.

15. Hudson is an openly gay man and disclosed his sexual orientation to some coworkers during routine interactions with his colleagues in Alpharetta.

16. Within the first month of Hudson's arrival in Alpharetta, he became involved in a dispute with a fellow team lead over the tone she took in dealing with a sales associate. The disagreement escalated into the other team lead directing vilely anti-gay slurs at Hudson, calling him a "little f*****" and informing him

that as far as she was concerned, "we would be better off if all f****** died." She added the insult that he was "an ignorant black [expletive]."

17. Hudson immediately reported the verbal abuse he experienced to his direct supervisor, Victoria Cranford, whose role was to supervise team leads. Cranford, Hudson soon learned from coworkers, was a friend of the colleague Hudson reported.

18. Upon information and belief Cranford did not admonish the employee who directed anti-gay remarks toward Hudson. Instead, soon after Hudson's complaint, Cranford belittled him with a slur that rarely survives past elementary school, greeting him one morning with the words "Hey, sissy."

19. Hudson reported Cranford and the offensive behavior by another team lead to Walmart's human resources department and the Alpharetta location's store manager, Cody Hurley. Cranford responded by lashing out at Hudson for making a formal complaint, telling him that he was "acting like a b**** (a sexually derogatory term)," but that "I am not surprised, just look at you," a reference that

6

Hudson attributed to his sexuality and his failure to conform to her vision of gender stereotypes.

20. During the summer of 2020, Hudson continued to experience derogatory and offensive slurs from Walmart employees. A sales associate asked Hudson at one point if he was raised in a ghetto, remarking to him that he had heard that blacks typically were, and "that is where y'all learn to act like n******."

21. Hudson followed what he understood to be his chain of command, and he reported an employee's use of the n-word to his face to Cranford. Rather than express sympathy or outrage, Cranford asked Hudson why he found the conversation and the use of the word "n*****" offensive when he had surely "heard it your whole life," and she inquired of Hudson, "Would you prefer he had said porch monkey?"

22. After Cranford's indifference to the use of a racial epithet on the work floor, Hudson once again lodged complaints with the Alpharetta Walmart's manager and on the employee hotline to the HR department. Hudson was never

contacted by HR or other company investigative staff, and to his knowledge, as with his earlier reporting, no corrective steps were taken.

23. At some point in the latter part of the summer of 2020, Hudson was admonished by Cranford and another member of the management team that his persistent complaints to the HR office were drawing negative attention to the Alpharetta store from corporate headquarters and that he was in danger of being fired or demoted if he did not stop complaining.

24. In the same time frame, Hudson was approached by two individuals, one a sales associate and the other a regular customer of the Alpharetta Walmart, who told him that Cranford had urged them to file false complaints against Hudson to the effect that he called them sexist or anti-white racial epithets. Hudson again reported the incidents to higher management, with the same lack of results as his previous complaints.

25. In August or September, 2020, a white male customer initiated an argument with Hudson and, during the exchange, referred to him as a n*****. An

employee who witnessed the episode warned Hudson that she recognized the individual and that he was a social friend of Cranford's.

26. Employees regularly make their own purchases at Walmart as they head home or during breaks. In September 2020, Hudson made a commonplace mistake of failing to scan a small item on the self-checkout kiosk. He noticed the error that night on his receipt, and in line with company policy, he reported it to Cranford as his immediate supervisor. She told him the incident did not warrant discipline or a write-up as long as he promptly paid for the item, which he did.

27. On October 6, 2020, Hudson was met at work by an off-site Walmart official who told him that he was being terminated for theft of property. Hudson was escorted off the premises by several managers and made to turn in his company equipment in front of the team he supervised, a process that is not Walmart's typical practice for handling terminations.

28. Hudson subsequently learned that in the aftermath of his abrupt termination, numerous store employees were told by Cranford that Hudson had been caught stealing from Walmart.

29. Upon information and belief, Cranford instigated Hudson's termination in retaliation for his repeated complaints to the company about her discriminatory and offensive language and the presence of racial and homophobic bigotry at the Alpharetta Walmart. Rather than conduct an adequate inquiry into Cranford's false claims, the company effectively rubber-stamped her retaliatory actions.

30. Walmart's HR department and senior management at the Alpharetta store were informed by Hudson of a hostile work environment at the store based on his race and sexual orientation, and they were told that his direct supervisor openly displayed racist and homophobic bigotry toward him and ignored his concerns about offensive behavior. Walmart did not promptly investigate Hudson's complaints of gender orientation and racial harassment, nor did they take steps to prevent, remedy, or correct the conditions of which Hudson complained.

31. The discriminatory conduct Hudson encountered at Walmart caused him profound embarrassment and humiliation, placed him in psychological and physical fear, cost him income, and damaged his reputation.

## COUNT I

## (Hostile Work Environment Based on Race in Violation of Title VII)

32. Hudson incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

33. Hudson, an African American, was subjected to a hostile environment based on race during his employment by Walmart.

34. The harassment Hudson experienced was sufficiently severe or pervasive that it altered the terms and conditions of his employment and created a discriminatorily abusive work environment.

35. Walmart is responsible for the discriminatorily abusive working environment Hudson encountered in that it knew about the harassment and failed to promptly investigate Hudson's complaints of racial harassment, nor did they take steps to prevent, remedy, or correct the conditions of which Hudson complained. Accordingly, Walmart is liable to Hudson for subjecting him to a hostile work environment on the basis of race.

36. As a result of Walmart subjecting Hudson to a hostile work environment on the basis of race, Plaintiff has suffered monetary damages, including but not limited to back pay; and noneconomic compensatory damages, including emotional distress, humiliation, embarrassment, and mental anguish.

## COUNT II
### (Hostile Work Environment Based on Sexual Orientation or Sex in Violation of Title VII)

37. Hudson incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

38. Hudson, a gay man, was subjected to a hostile environment during his employment by Walmart based on his known or perceived sexual orientation, and because he failed to conform to traditional sex sterotypes.

39. The harassment Hudson experienced was sufficiently severe or pervasive that it altered the terms and conditions of his employment and created a discriminatorily abusive work environment.  Accordingly, Walmart is liable to

Hudson for subjecting him to a hostile work environment on the basis of his sexual orientation or sex.

40. Walmart is responsible for the discriminatorily abusive working environment Hudson encountered in that it knew about the harassment and failed to promptly investigate Hudson's complaints of harassment based on his sexual orientation or sex, nor did they take steps to prevent, remedy, or correct the conditions of which Hudson complained. Accordingly, Walmart is liable to Hudson for subjecting him to a hostile work environment on the basis of sexual orientation or sex.

41. As a result of Walmart subjecting Hudson to a hostile work environment on the basis of his sexual orientation or sex, Plaintiff has suffered monetary damages, including but not limited to back pay; and noneconomic compensatory damages, including emotional distress, humiliation, embarrassment, and mental anguish.

## **COUNT III**
**(Retaliation in Violation of Title VII)**

42. Plaintiff incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

43. Defendant retaliated against Plaintiff for engaging in protected activity in violation of 42 U.S.C.A. § 2000e-3(a).

44. Because Plaintiff engaged in protected activity in the form of making internal complaints regarding race and sex based discriminatory conduct, he experienced materially adverse retaliatory actions by Defendant that well might have dissuaded Plaintiff from making a charge of discrimination, including threatened termination, manipulated allegations by a supervisor designed to lead to his termination, and subsequent actual termination on pretextual grounds.

45. As a result of Defendant's retaliatory conduct, Plaintiff has suffered monetary damages, including but not limited to back pay; and noneconomic damages, including emotional distress, humiliation, embarrassment, and mental anguish.

## COUNT IV
**(Hostile Work Environment in Violation of 42 U.S.C.A § 1981)**

46.     Plaintiff incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

47.     Hudson, an African American, was subjected to a hostile environment based on race during his employment by Walmart.

48.     The harassment Hudson experienced was sufficiently severe or pervasive that it altered the terms and conditions of his employment and created a discriminatorily abusive work environment.

49.     Walmart is responsible for the discriminatorily abusive working environment Hudson encountered in that it knew about the harassment and failed to promptly investigate Hudson's complaints of racial harassment, nor did they take steps to prevent, remedy, or correct the conditions of which Hudson complained. Accordingly, Walmart is liable to Hudson for subjecting him to a hostile work environment on the basis of race.

50.     As a result of Walmart subjecting Hudson to a hostile work environment on the basis of race, Plaintiff has suffered monetary damages,

including but not limited to back pay; and noneconomic compensatory damages, including emotional distress, humiliation, embarrassment, and mental anguish.

## COUNT V
### (Retaliation in violation of 42 U.S.C.A. § 1981)

51. Plaintiff incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

52. Defendant retaliated against Plaintiff for engaging in protected activity in violation of 42 U.S.C.A. § 1981.

53. Because Plaintiff engaged in protected activity in the form of making internal complaints regarding racially discriminatory conduct, he experienced materially adverse retaliatory actions by Defendant that well might have dissuaded Plaintiff from making a charge of discrimination, including threatened termination, manipulated allegations by a supervisor designed to lead to his termination, and subsequent actual termination on pretextual grounds.

54. As a result of Defendant's retaliatory conduct, Plaintiff has suffered monetary damages, including but not limited to back pay; and noneconomic

damages, including emotional distress, humiliation, embarrassment, and mental anguish.

## **PRAYER FOR RELIEF**

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that all the following relief be granted:

A. Back pay.

B. Compensatory damages to the extent allowed by law.

C. Punitive damages to the extent allowed by law.

D. Attorneys' fees and costs of litigation.

E. Prejudgment and post-judgment interest at the highest lawful rate.

F. A permanent injunction enjoining Defendant and its employees or agents from maintaining a hostile work environment based on an employee's sex or race and/or from discharging an employee for engaging in protected activity.

G. A declaratory judgment that Defendant's actions violated Plaintiff's rights under Title VII and § 1981.

H. Such other equitable and monetary relief as the Court deems just and proper.

Respectfully submitted this 26th day of November, 2021.

**HKM Employment Attorneys LLP**
*s/Artur Davis*
Artur Davis[1]
2024 3rd Ave. North, Suite 307
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com
Jermaine "Jay" Walker
Georgia Bar No. 142044
3355 Lenox Road NE, Suite 705
Atlanta, GA 30326
Direct: 404-301-4020
jwalker@hkm.com

**Attorneys for Plaintiff**

---

[1] Mr. Davis is licensed in Alabama and the District of Columbia and will promptly file for admission pro hac vice.